[No. 39608.   Department One.   January 9, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR DEAN BREWSTER, *Appellant*.*

*Reported in 449 P.2d 685.

*Stanley W. Worswick,* for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Joseph D. Mladinov,* and *Eugene G. Olson,* for respondent.

WEAVER, J.—Defendant appeals from a judgment and sentence entered after a jury found him guilty of armed robbery.

At the time of the alleged crime and defendant's apprehension, he was under 18 years of age. June 22, 1965—34 days before his 18th birthday—the juvenile court transferred defendant to the superior court for trial as an adult. This transfer was made without a hearing.

July 1, 1965—26 days before his 18th birthday—an information was filed charging defendant with robbery.

Three months after his 18th birthday, defendant was brought to trial. The jury was unable to reach a verdict and was discharged.

The appeal in the instant case springs from defendant's second trial held April 10, 1967. The reason for the delay does not appear in the record. Defendant was then almost 20 years of age.

Defendant makes six assignments of error.

■ *First:* Shortly after defendant's first trial, a deputy prosecuting attorney conferred with him in jail in the absence of defendant's counsel. It appears that the purpose of the visit was to inform defendant of the conclusion reached by the jury in his first trial and to inform him that he would be retried. No statement was taken. Defendant made no admissions or confessions, exculpatory or inculpatory. The record of the second trial contains nothing referring to this consultation. Although we do not commend the visit of the deputy prosecuting attorney, we fail to see how his

uncalled-for conduct prejudiced defendant in any way. It certainly does not justify a dismissal of the charge against defendant by reason of the misconduct of the deputy prosecuting attorney. It would be a waste of space to distinguish *State v. Cory,* 62 Wn.2d 371, 382 P.2d 1019 (1963), the only authority cited by defendant. It is not apposite, factually or legally.

*Second:* Defendant claims the trial court erred when it refused to give his requested instruction of "lack of flight," claiming it should have been considered by the jury. Defendant cites no authority in support of the requested instruction, nor have we found any. The court need not consider an assignment of error that does not appear on its face to be meritorious. *State v. Rutherford,* 66 Wn.2d 851, 856, 405 P.2d 719 (1965). This is not the instant case; defendant's refusal to flee is not part of the res gestae. The requested instruction is in the nature of a self-serving declaration. 29 Am. Jur. 2d *Evidence* § 287. This assignment of error has no merit.

*Third:* Four persons witnessed the robbery, including the service station attendant. Two witnesses identified the defendant as the robber. The third witness was apparently not available. The fourth witness, called by defendant, testified that defendant was not "the man who came and robbed the gas station."

Upon cross-examination, the fourth witness testified he had previously been convicted of car theft; and that the one charged and convicted with him was "L. J. Brewster," who had been identified earlier in the trial as defendant's brother. Defendant urges that it was error to permit the witness, on cross-examination, to identify the person jointly convicted with him. We do not find this to be error, for the witness' answer admits what the record would show. In *State v. Steele,* 150 Wash. 466 at 469, 273 Pac. 742 (1929) (approved *State v. Frye,* 53 Wn.2d 632, 335 P.2d 594 (1959)), this court stated:

> It is at once apparent, of course, that if the record of the conviction is introduced, it will of necessity show the nature of the offense and the extent of the punishment,

and, since cross-examination is only an alternate method of proving the conviction, we see no reason why the witness may not be examined as to any matter the record itself will show, and this we think was the purpose of . . . [RCW 10.52.030].

*Fourth*: Defendant claims error because the special deputy prosecuting attorney who tried the case was, allegedly, not properly appointed. This is nothing but "nit-picking." Even admitting defendants' contention, nothing prejudiced defendant's trial. There is nothing to support the possibility of double jeopardy.

*Fifth:* Prior to defendant's arrest, but when he was a suspect, he and his mother were asked to come to the police station to discuss the robbery. Since the investigatory interrogation in June of 1965 was prior to *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (1966), defendant was not given the detailed warnings now required; the record supports the conclusion that defendant and his mother were told that they had the right to retain counsel.

Defendant made no admissions or confessions to the police. He interposed an alibi—that he was at home at the time of the crime. He talked generally regarding his whereabouts during the day. In the main it was these statements and explanations concerning his activities during the morning and afternoon preceding the robbery that were used to attack defendant's credibility when cross-examination exposed possible conflicts between his testimony and his earlier statements. The only statements made by defendant in his 1965 interview with the police that can possibly be considered to have an inculpatory ring concerned defendant's possible prior knowledge of the crime.

Considering the fact that almost 2 years had gone by between the 1965 conversation and the 1967 trial at which defendant testified in his own defense, it is more usual than not that certain minor inconsistencies on collateral matters would appear. Time dulls memories. We are not confronted with an attempt by the state to introduce inadmissible evi-

dence for impeachment purposes. If such were the case, a different question would be presented.

When defendant took the stand he exposed himself to possible impeachment. See *State v. McClung,* 66 Wn.2d 654, 404 P.2d 460 (1965), purporting to adopt the rationale of *Walder v. United States,* 347 U.S. 62, 98 L. Ed. 503, 74 Sup. Ct. 354 (1954).

In the present case we fail to appreciate how the cross-examination of defendant violated any of his constitutional rights. The court did not admit in evidence any statements that were per se inculpatory. None of the questions and answers involved "elements of the case" against defendant, but rather, concerned only collateral matters. The cross-examination is not subject to constitutional infirmities.

*Sixth:* Defendant contends (a) that the case must be remanded to determine whether his 1965 transfer from juvenile to adult status without a hearing was proper in the circumstances, as now required by the rule announced in *In re Dillenburg v. Maxwell,* 70 Wn.2d 331, 349 at 355, 413 P.2d 940, 422 P.2d 783 (1966-67), or (b) that in the alternative, the *Dillenburg* rule be modified and extended to require a new trial in every case where a transfer from juvenile to adult status has been made without a hearing.

We do not agree with either contention.

In *Dillenburg* the minor was charged; he was transferred to adult status without a hearing by an order void on its face, it having been entered by the probation officer, not by the judge; he pleaded guilty—all *before the minor's 18th birthday.* The minor was denied procedural due process, and that denial resulted in judgment and sentence *before* his 18th birthday.

In the instant case, defendant was charged while a minor; his transfer from juvenile to adult status was faulty; but the judgment and sentence from which this appeal is prosecuted springs from a trial held *when defendant was almost 20 years of age.*

The factual pattern of the instant case is exactly the same as that of *State v. Ring,* 54 Wn.2d 250, 339 P.2d

461 (1959). Ring was apprehended; the juvenile court transferred him to the superior court by an order subject to a procedural infirmity; the information alleging a crime was filed before Ring's 18th birthday. Ring's trial, as in the instant case, was held after his 18th birthday. On appeal, Ring contended that the superior court did not acquire jurisdiction over him. This court denied the contention and said:

> The fact that Harold M. Ring was under eighteen years of age when the second amended information was filed is of no moment. He was eighteen when the case was tried.

Justice should not be hampered by technicalities. Unless procedural infirmities deprive a defendant of constitutional due process of law or deny a right guaranteed by law, they should not prevent enforcement of law.

Our conclusion that defendant has not been prejudiced by the absence of a hearing upon his transfer to adult status is fortified by two recent opinions of this court. *In re Lesperance,* 72 Wn.2d 572, 434 P.2d 602 (1967); *State v. Kramer,* 72 Wn.2d 904, 435 P.2d 970 (1967).

In *Lesperance,* the court said:

> Applying the *Dillenburg* rule to the facts in this case, Miss Lesperance, now 18 years of age, is not subject to the juvenile court statutes of this state.
>
> The cause is remanded with instructions to dismiss the juvenile proceedings without prejudice. Any further proceedings against Miss Lesperance shall be in accordance with her status as an adult.

In *Kramer,* defendant was charged as a delinquent child with the crime of homicide allegedly committed just prior to his 18th birthday. He was tried and convicted upon an information filed 18 days after his 18th birthday, but the juvenile court proceedings were not dismissed until 4 days later. Upon appeal defendant claimed prejudice from the fact he had not been afforded a hearing in juvenile court.

This court said:

> When a juvenile cause is pending and not heard on its

merits prior to the time the juvenile reaches 18 years of age, the juvenile court loses jurisdiction over the cause. Judgment affirmed.

HUNTER, HALE, and McGOVERN, JJ., and WIEHL, J. Pro Tem., concur.