IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39752-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| KARLI A. HAAS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — RCW 9.94A.535(3)(e) authorizes a trial court to impose an exceptional sentence for a major violation of the Uniform Controlled Substances Act (VUCSA), chapter 69.50 RCW. By definition, a major VUCSA can occur when "[t]he current offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so." RCW 9.94A.535(3)(e)(i).

Here, the State brought eight charges against Karli Haas for selling controlled substances. The charges related to three separate transactions. A jury found Ms. Haas

guilty of all eight charges. The trial court determined that Ms. Haas's standard range sentence was 12+ to 20 months for each charge, ran all eight sentences concurrently, and imposed an exceptional sentence of 40 months.

Ms. Haas argues that RCW 9.94A.535(3)(e)(i), by its plain language, applies only when multiple transactions are charged in the aggregate in a single offense. We agree with Ms. Haas, respectfully disagree with an unpublished decision of our sister division, and remand for resentencing.

FACTS

On three occasions over the span of three months, Karli Haas sold methamphetamine and pills that were stamped to look like Oxycodone but actually contained fentanyl. In the first sale, she sold an ounce and a half of methamphetamine and a couple of fentanyl pills for $400. In the second sale, she sold an ounce of methamphetamine and three fentanyl pills for $310. In the third sale, she sold 50 fentanyl pills for $325.

The State filed five separate charges for each substance sold during each transaction, and three additional charges for each delivery of the counterfeit Oxycodone pills. The State also charged a statutory sentence enhancement, alleging that each of the eight offenses were major violations of the controlled substances act within the meaning of RCW 9.94A.535(3)(e)(i).

2

In the court's instructions, the jury was directed to determine if each of the eight charges were major trafficking violations under the Uniform Controlled Substances Act, and was informed that the presence of the following factor may identify the offense as a major trafficking offense: "Whether the offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so." Clerk's Papers at 81. The jury returned guilty verdicts on all eight charges and special verdicts finding that all charges were major trafficking violations.

At sentencing, the trial court determined the delivery convictions that occurred on the same day constituted the same criminal conduct. Because there were three separate deliveries, the court's determination resulted in an offender score of "2" and a standard range sentence of 12+ to 20 months for each conviction. The trial court imposed a 40-month exceptional sentence on each conviction, ran each of the sentences concurrent to one another, and supported its enhanced sentence with written findings and conclusions. In addition, the trial court imposed legal financial obligations, including a $500 victim penalty assessment (VPA) and a $100 DNA collection fee.

Ms. Haas appealed to this court.

ANALYSIS

A.    THE VUCSA MULTIPLE TRANSACTIONS AGGRAVATOR

Ms. Haas argues the trial court erred by imposing the VUCSA multiple transaction

aggravator. Preliminarily, the State urges us not to reach the merits of Ms. Haas's

argument because she failed to challenge the aggravator below. We disagree. "In the

context of sentencing, established case law holds that illegal or erroneous sentences may

be challenged for the first time on appeal." *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d

452 (1999).

To impose a sentence above the standard range, a court must find substantial and

compelling reasons justifying an exceptional sentence based on specifically enumerated

aggravating circumstances that must be determined by a jury beyond a reasonable doubt.

RCW 9.94A.535(3), .537(3). One of the enumerated circumstances is the VUCSA

multiple transactions aggravator, which applies if "[t]he current offense involved at least

three separate transactions in which controlled substances were sold, transferred, or

possessed with intent to do so." RCW 9.94A.535(3)(e)(i).

Ms. Haas argues the aggravator applies, according to its plain language, only when

multiple transactions are charged in the aggregate in a single offense. So, according to

Ms. Haas, for the "current offense" to "involve" at least three separate transactions, *a*

*single charge* must include at least three separate transactions.

4

No. 39752-1-III
*State v. Haas*

The State responds by citing the unpublished decision of *State v. Malone*,

No. 43823-2-II, slip op. at 19 (Wash. Ct. App. Aug. 19, 2014) (unpublished),

https://www.courts.wa.gov/opinions/pdf/D2%2043823-2-II%20Unpublished%

20Opinion.pdf,[1] which concluded that "current offense" includes all conduct related to

the crime with which the defendant is charged. So, according to the State, for the

"current offense" to "involve" at least three separate transactions, *the entire case* must

involve at least three separate transactions.

At issue here are the meanings of the "current offense" and "involved." The

meaning of statutory language is a matter of statutory interpretation, which we review de

novo. *State v. Siers*, 174 Wn.2d 269, 274, 274 P.3d 358 (2012).

We apply the following well-established standards for interpreting statutory

language:

> Our fundamental purpose in construing statutes is to ascertain and
> carry out the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn,
> LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). If a statute's meaning is plain
> on its face, then the court must give effect to that plain meaning as an
> expression of the legislature's intent. *Id.* The court ascertains a statute's
> plain meaning by construing that statute along with all related statutes as a
> unified whole, and with an eye toward finding a harmonious statutory
> scheme.

[1] Unpublished opinions of the Court of Appeals have no precedential value and
are not binding on any court, but if filed after March 1, 2013, may be cited as nonbinding
authorities and may be accorded such persuasive value as the court deems appropriate.
GR 14.1.

*State v. Bigsby*, 189 Wn.2d 210, 216, 399 P.3d 540 (2017). Both parties urge us to give a "plain meaning" construction to the VUCSA multiple transactions aggravator.

### Current offense

RCW 9.94A.535 does not define "current offense." However, throughout the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, "current offense" is used to describe the charged crime of conviction for which a sentence is being calculated.

For example, RCW 9.94A.589(1)(a) directs how to compute the standard range for each offense whenever a person is to be sentenced for two or more "current offenses" and provides that each "current offense" scores as if it were a prior conviction. In addition, RCW 9.94A.535(2)(c) authorizes an exceptional sentence when multiple "current offenses" result in an offender score exceeding 9, thus avoiding the predicament of allowing any current offense going unpunished. We construe "current offense" in harmony with these related statutes and conclude that "current offense" refers to a single charge rather than the entire case.

### Involved

Absent a statutory definition, a statutory term may be given its plain meaning by resorting to its dictionary definition. *Jametsky v. Olsen*, 179 Wn.2d 756, 766, 317 P.3d 1003 (2014). The plain meaning of the term "involved" is "included." *See* MERRIAM-WEBSTER'S THIRD NEW INT'L DICTIONARY 1191 (1993). Thus, applying both plain

6

meanings to the challenged aggravator, we conclude that a court may impose the VUCSA

multiple transactions aggravator when the individual charge includes at least three

separate transactions.

### The stated purposes of the SRA

Prosecutors have significant discretion in whether to charge incidents separately or

together. *E.g.*, *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *abrogated on

other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988). Our

construction of the aggravator renders it consistent with the SRA's stated purposes

to "[e]nsure that the punishment for a criminal offense is proportionate to the

seriousness of the offense and the offender's criminal history" and that sentences are

"commensurate with the punishment imposed on others committing similar offenses."

RCW 9.94A.010(1), (3).

Here, because the State charged the individual crimes separately rather than

combining the charges in the aggregate, it was not entitled to also have the VUCSA

multiple transactions aggravator applied to increase Ms. Haas's standard range

sentence.[2]

B.      LEGAL FINANCIAL OBLIGATIONS

Ms. Haas argues, and the State concedes, that the $500 VPA and the $100 DNA

collection fee should be struck.  We accept the State's concession.

Shortly after Ms. Haas's trial, the legislature amended the relevant statutes to

prevent those costs from applying to indigent defendants.  LAWS OF 2023, ch. 449, §§ 1,

4.  Both changes apply prospectively, *id.*, and thus apply to cases pending on direct

---

[2] The State cites, but does not discuss, *State v. Reynolds*, 80 Wn. App. 851, 912 P.2d 494 (1996).  There, Reynolds twice sold methamphetamine to undercover officers and once sold material she believed was methamphetamine.  She was convicted of three separate charges.  *Id.* at 853.  At sentencing, the trial court imposed an aggravated sentence, in part based on the current offense involving three or more separate transactions in which controlled substances were sold.  *Id.* at 854.  On appeal, Reynolds argued the evidence did not support the multiple transactions aggravator because only two of the transactions involved controlled substances.  *Id.* at 856.  We agreed and remanded for resentencing.  *Id.* at 862.  In providing direction to the trial court, we commented that it could "consider facts that establish elements of additional uncharged crimes to enhance a sentence when those facts are part and parcel of the current offense." *Id.* at 857.

There are three reasons *Reynolds* does not dictate a result contrary to the result reached here.  First, the quoted language is dicta.  Second, *Reynolds* was decided before the United States Supreme Court held that any facts that increase the penalty for a crime above the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).  Third, *Reynolds* implied but did not decide that "current offense" related to the entire case.

No. 39752-1-III
*State v. Haas*

review. *State v. Ramirez*, 191 Wn.2d 732, 749, 426 P.3d 714 (2018). Because Ms. Haas

is indigent, the amendments require the trial court to strike the challenged costs.

CONCLUSION

We remand for the trial court to sentence Ms. Haas within the standard range and

to strike the two challenged costs.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____
Staab, J.

_____
Cooney, J.

9